# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

RICHARD D.[1],

         Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

         Defendant.

Case No. 6:20-cv-1698-SI

**OPINION AND ORDER**

John E. Haapala, Jr., 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for
Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Leisa A. Wolf, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Richard D. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. When applicable, this Opinion and
Order also uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) under Title XVI of the Social Security Act (Act). For the following reasons, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for SSI on October 12, 2018, alleging a disability onset date of September 24, 2018. AR 152. Plaintiff's date of birth is June 7, 1994, and he was 24 years old as of the alleged disability onset date. AR 77. The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 93, 101, 104. Plaintiff appeared before an Administrative Law Judge (ALJ) for a hearing in April 2020. AR 31. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 12-30. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1, 149-51. The ALJ's decision thus became the final decision of the Commissioner; Plaintiff seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

 At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

(SGA) since September 24, 2018. AR 17. At step two, the ALJ found that Plaintiff had the

following severe impairments: inflammatory arthritis, Still's disease (juvenile rheumatoid

arthritis) or Behcet's syndrome,[2] depressive disorder, and learning disorder. *Id*. At step three, the

ALJ determined that none of the impairments, either individually or in combination, met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. AR 18.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform

sedentary work as defined 20 C.F.R. § 416.967(a), that Plaintiff can occasionally climb ramps,

---

[2] Behcet's syndrome is a rare disorder that causes blood vessel inflammation throughout the body. *See Behcet's disease*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/behcets-disease/symptoms-causes/syc-20351326

stairs, ladders, ropes, and scaffolds, and can occasionally balance, stoop, kneel, crouch, and crawl. AR 19-20. Further, the ALJ found that Plaintiff can "tolerate occasional exposure to extreme workplace heat and cold," but "no exposure to workplace hazards such as unprotected heights and exposed, moving machinery." AR 20. The ALJ found that Plaintiff can perform simple, routine tasks, and can tolerate occasional contact with the general public. *Id*. Based on the limitations in Plaintiff's RFC, the ALJ found that Plaintiff could not perform any past relevant work. AR 25. At step five, relying on testimony of a vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including Stuffer (10,000 jobs in the national economy), Eyeglasses Frame Polisher (12,000 jobs in the national economy), and Film Touch-Up Inspector (10,000 jobs in the national economy). AR 26. The ALJ thus concluded that Plaintiff was not disabled. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) improperly discounting Plaintiff's subjective symptom testimony and (B) improperly rejecting medical opinion evidence from Plaintiff's rheumatologist, Dr. William Maier, MD, (Dr. Maier), and Plaintiff's mental health provider, Dr. Jeff Cole, PhD, (Dr. Cole). The Court addresses each argument in turn.

### A. Plaintiff's Subjective Symptom Testimony

#### 1. Plaintiff's Testimony

At the hearing, Plaintiff testified that he suffers from Behcet's disease.[3] AR 36. Plaintiff testified that Behcet's disease causes symptoms including lumps and inflammation in his legs

---

[3] Plaintiff was previously misdiagnosed with Still's disease, which was reflected in his application, before receiving a proper diagnosis of Behcet's disease. AR 36-37.

that prevent him from walking and resulted in a two-week hospitalization. AR 46. Plaintiff

further described the symptoms of nausea, vomiting, and fever. AR 48. Plaintiff testified that

Humira, the treatment Plaintiff is prescribed for Behcet's disease, wears off quickly and that

every week Plaintiff experiences swollen lymph nodes, fevers, congestion, inflammation in his

eyes, and loss of circulation in his arms and legs. AR 47-48. Plaintiff further described feeling

like his "body kind of starts shutting down on itself," and that he experiences these symptoms

about one or two days each week. *Id*. Plaintiff testified that his hospitalization in 2019—due to a

flare-up of Behcet's disease—and an inability to work physically led to Plaintiff quitting his job

at the golf course. AR 45. Plaintiff testified that while working at the golf course he "just drove

golf carts around" and "got paid to really just sit there and just watch the facilities." AR 45-46.

Plaintiff testified that Dr. Maier's treating source statement evidences the fact that Plaintiff is

unable to perform at the sedentary level and has significant issues with the use of upper

extremities. AR 37.

Plaintiff testified that he has "a group of buddies," sometimes referred to as "sponsors" in

the medical record, that are building a vehicle for Plaintiff so that he can go "into the wilderness"

and see places to which he cannot physically walk anymore. AR 40. Plaintiff testified that he has

traveled to California and Nevada to attend racing events with one of the "sponsors." AR 40-41.

### 2. Standards for Reviewing the ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[4] There is a two-step

---

[4] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166

process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

_____

(Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 3.  The ALJ's Evaluation of Plaintiff's Testimony

The ALJ determined that Plaintiff's allegations concerning the intensity of his symptoms were "not entirely consistent with the record." AR 21. The ALJ found that Plaintiff's subjective complaints were undermined by evidence of Plaintiff's "high level of activity" and ability to manage with medications that result in normal status exams. *Id.*

### a. Activities of Daily Living

The ALJ rejected Plaintiff's symptom testimony finding, in part, that it conflicted with Plaintiff's reported activities of daily living. AR 21. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (simplified)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found that because Plaintiff had attended "numerous" race car events, maintained part-time work at a golf course, performed work on his vehicle, and completed 30 days of "volunteer work," Plaintiff maintained a high level of activity and, thus, was not disabled. AR 21. First, the ALJ pointed to Plaintiff's part-time work at the golf course and Plaintiff's ability to attend two car races, one located in Nevada and the other in California. AR 21 (citing AR 364-65, 519, 529, 1051). The ALJ did not directly state how these facts conflicted with Plaintiff's testimony—rather, these facts were included in Plaintiff's testimony. *See* AR 40-41, 44-45. Additionally, the same records the ALJ cited to indicate that Plaintiff attended two races and worked part-time show that Plaintiff's condition was quite serious. For example, the ALJ cited progress notes from Plaintiff's mental health provider, Dr. Cole, indicating that Plaintiff was working part-time. AR 21 (citing AR 364-65). The same progress notes, however, include observations documenting that Plaintiff reported he "had to cut his hours back at work as he physically could not do it," that working more hours previously caused Plaintiff "major medical complications," and that Plaintiff "[c]ontinues to work on a very part-time basis . . . [and Plaintiff] continues to be severely ill on a daily basis [and] has many symptoms." AR 364-65. The ALJ also cited Dr. Cole's progress notes to show Plaintiff attended a car race. AR 21 (citing AR 1051). Those same notes, however, include Dr. Cole's opinion that, due to Plaintiff's medical and psychiatric conditions, Plaintiff is "unable to sustain work in a full-time position in any capacity." AR 1051. The notes from this session also document that Plaintiff had been unwilling to accept his physical limitations, and that the limitations "contribute significantly to his depression." *Id.*

The ALJ is factually correct that Plaintiff attended two out-of-state racing events. Plaintiff included this information in his testimony. The ALJ did not solicit information or reach

conclusions about how those events conflicted with Plaintiff's alleged limitations. Without more information about what attending these events entailed and how Plaintiff managed to travel, it cannot be said that attending two events in a 14-month time span is a clear and convincing reason to disregard Plaintiff's testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (simplified)); *Reddick*, 157 F.3d at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

The ALJ also is correct that medical evidence from June 2019 indicates Plaintiff reported to a medical provider that he was "working a lot" at the golf course. AR 519. But treatment notes and testimony reflect that Plaintiff continued to attempt to work, *despite* his condition and the seemingly severe effects to his health. There is ambiguity as to whether the ALJ concluded that Plaintiff's part-time work demonstrated that Plaintiff has the ability to engage in SGA, particularly when, at step one, the ALJ found that Plaintiff had only showed earnings that exceeded the SGA level in one quarter of 2019 and that the rest of the earnings fell below SGA levels. AR 17. Plaintiff's efforts to work a few hours each week are not clear and convincing reasons that Plaintiff's testimony should be rejected.

The ALJ found that Plaintiff's testimony was inconsistent regarding Plaintiff's group of friends or "sponsors."[5] AR 21. The ALJ determined that Plaintiff's testimony regarding his associates was inconsistent, both because they were referred to as "sponsors" in some records and as "friends" in others and because Plaintiff testified that these associates were helping

---

[5] The Court refers to Plaintiff's group as "associates."

Plaintiff build a vehicle,[6] whereas the ALJ found that "[n]umerous records" refer to Plaintiff's continued work on his vehicle and "do not mention that he is getting any help." *Id.* (citing AR 361-63, 1053).

The ALJ's findings that the discrepancy about Plaintiff's associates and Plaintiff's purported ability to work on his vehicle contradicts Plaintiff's symptom testimony are not supported by substantial evidence in the record. The ALJ cited Dr. Cole's progress notes that include the statement that Plaintiff "is building a [vehicle] for off-road." AR 21 (citing AR 361). In the same paragraph, however, Dr. Cole indicates that Plaintiff has horrible pain, feels sick all the time, has low energy and difficulty eating, and reports that "it feels like he has been hit by a bus." AR 361. The ALJ also pointed to Dr. Cole's progress notes from August 18, 2018, to substantiate the conclusion that Plaintiff is able to work on his vehicle. AR 21 (citing AR 362). Dr. Cole's August 18, 2018 notes also include the following:

> [Plaintiff] cannot do the one thing that provides [him] any motivation which is work on his [vehicle]. . . . [Plaintiff] wants to [build it] and then go out and help kids especially those with medical issues by taking them on rides. When talking about his truck [it] is clear he is far from finished as he has multiple parts in different settings and no money to work on any of them. [Plaintiff] also talks about how he can only do so much physically [and at] a certain point [his] body hits the wall and he is done.

AR 362. The ALJ mischaracterized the record evidence, and thus erred in reaching the conclusion that Plaintiff's purported ability to work on his vehicle is a clear and convincing reason to reject Plaintiff's symptom testimony.

The ALJ found other inconsistencies in the record, including Plaintiff's testimony that he quit working at the golf course in *July* 2019 due to a flare-up of his condition, whereas Plaintiff

---

[6] The testimony and medical evidence use the terms "truck" and "car" interchangeably; the Court uses the term "vehicle" for consistency.

reported to Dr. Cole that the golf course closed in *September* 2019. AR 21 (citing AR 1053). This may be an inconsistency but is more accurately described as ambiguity regarding Plaintiff's reasons for quitting the golf course. This ambiguity does not amount to a clear and convincing reason that Plaintiff's symptom testimony should be rejected.

The ALJ's most compelling finding, that "[p]er [Plaintiff's] own testimony, [Plaintiff] was able to complete 30 days of volunteer work at a homeless shelter," seems to be an improper characterization of the evidence. Plaintiff did not demonstrate such physical improvement that his condition sufficiently allowed him to begin volunteer work—Plaintiff was required to complete 30 days of community service at a homeless shelter as part of his probation requirements. AR 53. Plaintiff obtained a doctor's note allowing Plaintiff to complete "light duty" at the shelter and described completing the requirement periodically, "when [he] could." AR 54. Due to Plaintiff's health issues, the shelter worked with him so that he could complete the hours "when [he] wasn't sick." *Id.* In *Lingenfelter*, the Court found that the claimant had attempted work "only because of extreme economic necessity" and that it was "at least as likely that the claimant tried to work in spite of his symptoms, not because they were less severe than alleged." 504 F.3d at 1039. Similarly, here, there are serious consequences for failing to meet the requirements of probation, and it is at least as likely that Plaintiff completed his requirements in spite of his symptoms in order to avoid the alternative punitive repercussions.

The only findings that the ALJ made relating directly to conflicts with Plaintiff's symptom testimony are not sufficient bases to reject Plaintiff's testimony. The ALJ found that Plaintiff did "strenuous activities" like using a weed eater, which conflicted with Plaintiff's testimony that Plaintiff was just paid to watch the facilities at the golf course. AR 21. While this may introduce ambiguity regarding Plaintiff's ability to engage in SGA, the ALJ did not point to

any other transferable work skills or evidence that Plaintiff engaged in labor on a consistent

basis. This singular instance of weed whacking does not alone support a rejection of Plaintiff's

symptom testimony. *See Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) ("A single

discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony.").

The ALJ did not offer specific, clear and convincing reasons for discounting Plaintiff's

symptom testimony. Instead, the offered reasons were vague and often mischaracterized

Plaintiff's testimony. Plaintiff explains that he engages in activities intermittently as his

condition allows, and the Court finds that the ALJ's conclusions to the contrary are not supported

by substantial evidence. *See Molina*, 674 F.3d at 1112-13; *Benecke*, 379 F.3d at 594. The ALJ

erred in rejecting Plaintiff's testimony because of Plaintiff's activities.

### b.  Symptom Improvement

A claimant's improvement with treatment is "an important indicator of the intensity and

persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). For example, "[i]mpairments that can

be controlled effectively with medication are not disabling for the purpose of determining

eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall

diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester

v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not

inconsistent with disability.").

The ALJ found that Plaintiff's condition has been "mostly stable since the alleged onset

date," that Plaintiff was able to manage his condition with medication, and that Plaintiff's

examination records are "mostly normal/unremarkable." AR 21. The ALJ specifically found that

Plaintiff's condition improved after he was prescribed Humira in August 2019 and the condition

was subsequently able to be managed with medication, save for any flare-ups that could be tied to poor compliance with Humira. AR 22.

The ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony due to symptom improvement. While the ALJ is correct—and Plaintiff admits—that Plaintiff's symptoms temporarily improved when he was placed on Humira in August 2019, the evidence supports Plaintiff's assertion that he still experienced severe symptoms and was not always able to obtain Humira. The ALJ concluded that by September 2019, Plaintiff was doing "much better on Humira" and was stabilized in October 2019. AR 22 (citing AR 467, 463). In September 2019, however, Plaintiff was experiencing "widespread myofascial trigger point tenderness," indicated a pain level of eight out of ten, and exhibited "mild mucositis" and "occasional acneiform lesions over the chest," while on medication. AR 468. Treatment records from September 2019 also include documentation that while Plaintiff was "clinically much improved on Humira," Plaintiff was still experiencing "residual arthralgias" and the provider suggested a trial of additional medication if symptoms didn't improve. AR 467. The records also documented Plaintiff had "musculoskeletal pain and occasional soreness in mouth." *Id.*

In October 2019, Plaintiff's rheumatologist wrote that Plaintiff "is a complicated patient with Behcet['s] syndrome complicated by recurrent thromboembolism, severe mucositis, rash and uveitis," that Plaintiff had been stabilized on Humira, and it was recommended that Plaintiff continue Humira to prevent "life-threatening complications" of Behcet's disease. AR 463. Dr. Maier also documented that Plaintiff had a "life-threatening systemic autoimmune disease." *Id.* The records from October 2019 include Plaintiff's "active problems" including Behcet's disease, chronic embolism, and deep vein thrombosis. AR 464. The medical evidence also

documented that at that time Plaintiff experienced an increase in "pustular like skin lesions over his face and extremities," *Id*.

Further, the ALJ found that Plaintiff's symptoms after October 2019 were tied to temporary, poor compliance with Humira. AR 22. Plaintiff argues that he was not always able to obtain Humira and medical evidence substantiates this claim and further proves that Plaintiff's condition was not well-controlled by December 2019. *See* AR 459 (stating Plaintiff switched to Oregon Health Plan insurance that didn't cover Humira). The same records state that Plaintiff was experiencing "[r]efractory Behcet's disease with life-threatening complications [*i.e.*,] pulmonary thromboembolism." *Id.* Additionally, in his testimony, Plaintiff stated that he experiences debilitating flu-like symptoms at least two days a week, despite Humira. AR 48. In February 2020, Plaintiff was seen for arm pain, the medical provider opined that they suspected "cervical nerve compression." AR 480. Lab results from February 2020 indicated that Plaintiff was experiencing "deep vein thrombosis," "pulmonary embolism," and the results were "indicative of the presence of a [blood] clot." AR 491. Progress notes from Dr. Cole document that in March 2020 Plaintiff reported that "[h]e has not gone to the emergency department in the past two months but he continues to have frequent fevers and feel terrible. [Plaintiff] reported he has sores in his mouth and aches all over his body." AR 1050.

The ALJ found that the numerous examinations show surprisingly unremarkable results including full range of motion in neck without pain, good grip strength, steady gait. AR 22. The Commissioner argues that Plaintiff's normal findings and "temporary problems" indicate that Plaintiff had significantly improved. ECF 20 at 4. Plaintiff responds that the Commissioner "completely misunderstands the nature of Plaintiff's disease, and instead relies on normal findings unrelated to Plaintiff's condition." ECF 21 at 2. Plaintiff explains that "Behcet's disease

is a rare disorder that causes blood vessel inflammation throughout the body" that "causes digestive problems (pain, diarrhea, bleeding), brain inflammation, blood vessel inflammation and blood clots, joint swelling and pain, eye inflammation, genital sores, skin sores, and mouth cankers." *Id.* The characterizations in Dr. Maier's records substantiate this argument, and at minimum introduce ambiguity as to whether Plaintiff's temporary hospitalizations are related to Plaintiff's alleged disabling condition and preclude the ALJ's finding from being a clear and convincing reason supported by substantial evidence.

There is ambiguity in the record as to whether Plaintiff still experiences debilitating symptoms while Plaintiff has access to Humira. The ALJ did not provide clear and convincing evidence that Plaintiff's symptoms have improved to support a finding that Plaintiff is not disabled. The ambiguity in the record should be clarified on remand.

**B.  Medical Opinion Evidence**

**1.  Standard for Reviewing Medical Opinion Evidence**

Plaintiff filed his application for benefits on September 24, 2018. AR 152-58. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-

factors,[7] in determining how persuasive the opinions are. 20 C.F.R. § 416.920c(c). Supportability

is determined by whether the opinion is supported by relevant objective medical evidence, and

the source's explanation for the opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined

by how consistent the opinion is with other medical opinions and prior administrative findings.

20 C.F.R. § 416.920c(c)(2).

       The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 416.920c(b). The ALJ is not required to explain how he or she considered

other secondary medical factors, unless he or she finds that two or more medical opinions about

the same issue are equally well-supported and consistent with the record but not identical.

20 C.F.R. § 416.920c(b)(2)-(3). The Court must, moreover, continue to consider whether the

ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also*

*Hammock*, 879 F.2d at 501.

       Plaintiff contends that even under these new regulations, the ALJ must still provide

"specific and legitimate" reasons to reject controverted medical opinions. The Commissioner

does not dispute that substantial evidence must support the ALJ's decision. The Commissioner

argues that because the new regulations eliminate the hierarchy of medical opinions that existed

under the old regulations, the case law setting different requirements to reject medical opinions

based on that hierarchy (such as "specific and legitimate reasons" for contradicted examining

physicians) is now inapposite.

       This issue was addressed by another district court:

---

       [7] The secondary factors include: relationship with claimant; specialization; and "[o]ther factors." 20 C.F.R. § 416.920c(c).

In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

*Terry B. v. Acting Comm'r of Soc. Sec.*, 2021 WL 6072708, at *2 (W.D. Wash. Dec. 23, 2021) (alterations and emphasis in original).

The new regulations require an ALJ to evaluate medical opinion evidence based primarily on consistency and supportability irrespective of whether a "treating," "examining," or "reviewing" source gave the opinion. That does not mean, however, that the ALJ does not need to provide specific and legitimate reasons for why the medical opinion is or is not consistent with or supported by the evidence. *See Carrie R. v. Comm'r*, 2022 WL 35777, at *4 (D. Or. Jan. 4, 2022) ("The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so. . . In

other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." (citations omitted)). Until the Ninth Circuit provides further guidance on this issue, the Court agrees that the ALJ must still provide specific and legitimate reasons in analyzing medical opinions under the new regulations.[8]

### 2.  ALJ's Evaluation of Medical Opinions

#### a.  Dr. Maier

The ALJ assessed two opinions provided by Plaintiff's rheumatologist, Dr. Maier, from May 2019 and August 2019. AR 24. In the May 2019 opinion, Dr. Maier assessed that Plaintiff needs to rest throughout the day, need a sit/stand option, can sit/stand/walk in combination of only five hours per day and needs extra breaks. AR 404-05. Dr. Maier concluded that Plaintiff would miss four or more days of work per month and that Plaintiff was limited in using his hands only ten percent of the time. AR 405. In Dr. Maier's opinion from August 2019, Dr. Maier assessed that Plaintiff would be disabled for more than a year, could not stand more than 30 minutes, not lift an object greater than 20 pounds, and should not engage in strenuous activity. AR 416.

The ALJ found Dr. Maier's opinion to be "not fully persuasive." AR 24. The ALJ found that Dr. Maier's opinions offered "little actual or specific support," that the checkbox form was not correlated with specific citations to the medical record, and that the narrative opinion was merely a conclusory statement. *Id.* Further, the ALJ found that Dr. Maier's observations,

---

[8] At this time, the Court expresses no opinion about the validity of the other standards for reviewing medical evidence previously established by the Ninth Circuit such as the "clear and convincing" standard for considering uncontradicted evidence by a treating physician.

including Plaintiff's "extreme manipulative limitations," were inconsistent with the record, specifically citing Plaintiff's travel, recreational activities, and purported work on his truck. The ALJ found that Plaintiff's work history at the golf course directly contradicts Dr. Maier's opinion that Plaintiff could only use his extremities ten percent of the time. *Id*. The ALJ found that the medical records showed Plaintiff had improved and stabilized after the July 2019 flare-up. *Id*. The ALJ, however, did find that Dr. Maier's assessment that Plaintiff could not lift more than 20 pounds was well-supported by the medical evidence and factored this limitation into the RFC. *Id*.

Plaintiff argues that the ALJ failed to apply the factors outlined in 20 C.F.R. § 416.920c(c), and that Dr. Maier's opinions were well supported by the treatment notes. The Commissioner correctly argues that an ALJ is not required to explain how they have applied all the factors, only the supportability and consistency factors. 20 C.F.R. § 416.920c(b). The Court considers whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

The ALJ's analysis of the supportability and consistency factors as required in 20 C.F.R. § 416.920c(b) resulted in the ALJ's conclusion that Dr. Maier's opinions conflicted with Plaintiff's activities and lacked specific support in the record. AR 24. Because this Court has determined that the ALJ erred in dismissing Plaintiff's symptom testimony due to Plaintiff's activities of daily living, it follows that the ALJ similarly erred by rejecting Dr. Maier's opinion due to Plaintiff's activities.

The ALJ also concluded that "a number of medical records reflected that the claimant was doing well, and was stabilized, not long after the claimant's flare-up in July 2019. AR 24 (citing 364-65, 463, 519-20, 529, 1051). While this finding failed to meet the clear and convincing standard required to reject Plaintiff's subjective symptom testimony, it meets the

lesser standard of a specific and legitimate reason. The ALJ's holding that Dr. Maier's opinion is not fully supported by medical record evidence is a rational reading of the record. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ thus did not err in finding Dr. Maier's opinion to be not fully persuasive.

### b. Dr. Cole

The ALJ considered an opinion provided in March 2019 by Plaintiff's mental health provider, Dr. Cole, finding it was "not fully persuasive." AR 23. Dr. Cole assessed that Plaintiff is "unable to sustain work based on his emotional state," that—when Plaintiff's symptoms are severe—Plaintiff would have difficulty functioning in any setting and his ability to work with the public and respond appropriately to supervisors would be impacted, and that Plaintiff will have excessive absences. AR 355-59. The ALJ determined that Dr. Cole's statements were "not well supported or fully consistent with the record as a whole." AR 23. The ALJ specifically cited Plaintiff's travel to Nevada to see a car race, part-time work at the golf-course, a six-month gap in treatment, and Dr. Cole's discussion of Plaintiff's "functioning limits due to arthritis." AR 23.

The ALJ determined that Dr. Cole's "debilitating opinion" is not consistent with Plaintiff's ability to perform part-time work. AR 23. The Court disagrees. Dr. Cole's treatment records thoroughly detail Plaintiff's ongoing struggle with mental health and extreme physical suffering Plaintiff reported as he attempted to continue working. *See supra* section A(3)(a) at 11-13 (finding that Dr. Cole's notes thoroughly detail Plaintiff's physical symptoms and resulting modifications to his work schedule); *see also* AR 362 (documenting that Plaintiff reported that "he continues to be very depressed and suffer physically" and that he is only able to work six to eight hours per week because "the pain gets so severe he cannot tolerate it"); AR 363 (explaining that Plaintiff reported that he recently has been feeling "a little better and [is] able to work a little

more of the golf course" but reported that "doing so however causes significant harm and feels

like it is killing him"); AR 366 (documenting that Plaintiff continues to work eight to ten hours

per week at the golf course, yet "this is all that he can do," that Plaintiff reported "his body has

been killing him," and that Plaintiff experienced vomiting and swollen lymph nodes).

The ALJ found that Dr. Cole's statements were not well supported, but the medical

record specifically bolsters the limitations Dr. Cole assessed. Dr. Cole's opinion that Plaintiff

would have difficulty interacting with others is supported by observations that Plaintiff reports

that he "continues to be in a horrible state," is "totally depressed" and got into a conflict with a

coworker. AR 367. Dr. Cole further noted that Plaintiff reported irritability, a lack of patience,

and extreme depression and hopelessness. *Id.* The ALJ found that Dr. Cole's progress notes

included evidence that Plaintiff travelled to Nevada for a racing event and "that activity is not

consistent with the debilitating level of pain and depression reported by [Plaintiff]." AR 23

(citing AR 365). The Court disagrees. *See supra* section A(3)(a) at 12. It appears that Plaintiff,

despite debilitating pain, was able to attend one racing event with the help of an associate.

Plaintiff will not be punished for attempting to lead a normal life in the face of his limitations.

*See Reddick*, 157 F.3d at 722.

The ALJ rejected Dr. Cole's opinion, in part, because: "Much of Dr. Cole's treatment

discussion was the claimant's functioning limits due to arthritis, but Cole is not a medical doctor,

and thus limitations attributable to arthritis fall outside of his expertise." AR 23. In both

Dr. Cole's progress notes and the March 2019 treating source statement, Dr. Cole did not make

any inappropriate observations of Plaintiff's medical condition. AR 355-59. The treating source

statement includes assessments of physical limitations such as: "[C]ognitive behavioral therapy

to address [Plaintiff's] depression and coping with his multiple stressors, primarily medical

issues," and "when [Plaintiff's] symptoms are severe he will have difficulty functioning in any [work] setting." AR 356. Dr. Cole made no mention of Plaintiff's arthritis specifically and did not appear to make any statements outside of his expertise.

Although the ALJ's assessment of the frequency of treatment, or six-month gap in Dr. Cole's visits with Plaintiff, is reasonable, this factor is only secondary to the overall supportability and consistency of the opinion. *See* 20 C.F.R. § 416.920c(c). The ALJ's rejection of Dr. Cole's opinion on supportability grounds is not supported by substantial evidence the record, because the opinion is clearly supported by the medical evidence. Dr. Cole's treatment notes are thorough and detailed, documenting Plaintiff's struggles with chronic, debilitating pain and severe depression. In this case, the Court cannot find that the ALJ's assessment provided substantial evidence, such that "a reasonable mind might accept as adequate to support a conclusion," *Burch*, 400 F.3d at 679. Accordingly, the ALJ erred in rejecting Dr. Cole's opinion.

## C.  Remand

Plaintiff seeks remand for an award of benefits or for further proceedings. Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful error by improperly discounting portions of Plaintiff's subjective symptom testimony and by rejecting Dr. Cole's medical opinion. Considering the record as a whole, however, conflicts and ambiguities remain. Further proceedings will allow the ALJ to determine the severity of Plaintiff's symptoms even when he has access to medication and to properly weigh Dr. Cole's opinion. For these reasons, a remand for benefits is not appropriate.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 26 – OPINION AND ORDER